## PHILLIPS vs. PROTECTION INSURANCE COMPANY.

1. The expression in a policy, requiring notice of loss to be given *forthwith*, must be understood to mean with all due diligence under the circumstances of the case. The distinction taken in Kyles case (11 Mo. R. 289) between the notice of loss and other preliminary proofs, was not well considered.

2. In an action on a policy, making it incumbent on the plaintiff to produce his vouchers, and submit to an examination under oath, if required by the agent of the company; if on such requisition, the plaintiff fails to comply with the condition of the policy, without excuse or justification, he cannot recover; but his failure is, to some extent, a question of fact and intention. If it was to gain time, and lessen the chances of detecting fraud, it would be fatal; but, if to save the plaintiff or his family from an epidemic, it would not.

Phillips vs. Protection Insurance Company.

3. If the underwriters refuse to pay the plaintiff's claim, because he has failed to submit to an examination under oath, they cannot afterwards insist on his failure to comply with other requisitions of the policy.

4. A clause in a policy requiring payment to be made in sixty days after loss, and filing proof at the office of the underwriters, applies to cases of an adjustment by the officer, and to no other. If the company refuse to adjust, an action will lie within the sixty days.

## APPEAL from St. Louis Circuit Court.

### STATEMENT OF THE CASE.

This was a suit on a policy of insurance against the defendant, a foreign corporation, doing business in St. Louis by an agency, according to our statutes. The policy, dated 10th February, 1849, was on plaintiff's stock in trade (being military goods, music and musical instruments) in a store on Market street, just below Second, on the south side of Market street. The building was consumed in the great fire of the night of 17th May, 1849, and with it the greater portion of plaintiff's goods. A portion of them were saved by plaintiff and his friends, who were busily engaged, till the building was on fire, and until the city authorities blew it up with powder to prevent the extension of the conflagration. The goods saved were carried out hastily, and deposited in different places—some in an adjoining alley—and as soon after the fire as possible they were carried to a room on Fourth street, rented temporarily, where they were inventoried, and their cost at eastern prices affixed, taken from invoices. This inventory was completed by the 25th May. On the 9th June, 1849, a bundle of papers, comprehending the inventory of goods, a statement of the amount of stock at invoice prices, at the time when the last account of stock was taken, being about eighteen months previous, when the stock on hand was over $18,000—a statement of amount of intermediate sales and purchases, with affidavits and certificates sustaining them; the whole concluding with an affidavit of plaintiff, signed by him, setting forth that the amount of goods is correct; that no other insurance existed; that the value of his stock on hand at the time of the fire amounted to :$16,500; that it belonged to him exclusively, and that the building in which it was, was exclusively occupied by him as a store, &c., for his said business; and that the fire originated on a boat in the harbor, and thence communicated to the town, &c. On the filing these papers, which had been delayed by the absence of —— Murray, (former clerk of plaintiff) in the country—whose assistance was necessary from his personal knowledge of the value of the stock when the account of it was last taken—the agent of defendant told plaintiff the claim would be attended to as soon as it should be arrived at in order, the office being crowded with business at that time. From that time till about the 1st of August, the cholera was epidemic in St. Louis, and on the 4th of June a child of plaintiff was attacked with it, and was dangerous several days, and still did not recover, and his medical adviser directed him to take it to the east, to the sea coast, for its health. His wife also was ailing. About a week after the fire, John Howard, the general agent of the defendant, arrived at St. Louis, and soon after took charge of this claim, and for some time had repeated interviews with the plaintiff, both at the defendant's office and at the plaintiff's counting room, and he examined the books and papers of plaintiff, and was daily occupied in this way for some time, and reported to the other agents, Conden and Farles. After this examination, and after the papers had been delivered to them as just stated, the agents offered a certain sum to plaintiff, but less than the amount claimed by him, which he refused to receive. They then, on the 19th June, served a written notice on the plaintiff, requiring him to submit to a personal examination on oath. This notice was served on him at his store on Fourth street, to

Phillips vs. Protection Insurance Company.

which he had removed from the room first occupied after the fire, and at a moment when he was on the way with his family to the boat, for the east—the carriage standing at the door with the sick child in it. The boat left at 5 p. m., on the 19th of June, with plaintiff and his family on board. The plaintiff returned on or about the 20th of September from the east, and went on that day to defendant's office, and notified the agents of his return, and his readiness to submit to the required examination. They appointed the next day for his attendance there. On the next day he attended, and the agents there read him a written notice, declining the examination, and utterly refusing to pay the claim, and denouncing it as fraudulent.

The plaintiff made out a supplementary statement, signed and swore to it, and filed it in defendant's office on the 21st September, 1849. It was taken to the office by plaintiff's counsel, and left there by him, on the desk of the agent of defendant there present, who remarked to him, that Gamble & Bates were their lawyers, and they would give plaintiff a good fight; and they utterly refused to pay the claim. On the 29th October, certificates were got from Mann Butler and Fdk. Kretchmar, the two nearest justices of the peace to the place of the fire; that is, nearest to the ruins of the plaintiff's said store. The substance of those certificates being substantially as required by the terms of the policy. These were left with the agents of the defendant on the 30th October, 1849. This suit was brought on the 3rd November thereafter. Previous to the bringing this suit, application was made to the agents of defendant by plaintiff and his counsel, for a sight of the said papers, filed with them by plaintiff, and they refused to show them or to give copies of them ; and it was not until two orders of a judge were procured requiring the furnishing copies, or permitting them to be taken, that the plaintiff's counsel were enabled to see said preliminary proof for the purpose of bringing this suit. It appeared in evidence that at the time of the fire, a Mr. Coste, a gentleman who had never been naturalized, held a commission as notary public, and his place of business was in the second story of the building on the corner of second and Market streets, and nearer to the plaintiff's store that was burnt than either Butler or Kretchmar; but that he was not generally known as a notary. Several men of business from that immediate neighborhood testified that they had no knowledge that there was such a notary there at the time of the fire. He executed his bond and commenced business as notary about the first of September, 1848, and supposed that his bond was filed in St. Louis, and had no knowledge of its having been sent to Jefferson City. A mass of testimony was given and appeared on the record as to the fire, its progress, and destruction of all that part of the city to the northeast of plaintiff's store, till it reached that spot, and as to the efforts to remove his goods, and as to the amount of stock then on hand. It was proved that hfs books and papers were kept in a desk in a small room in the second story, where the book-keeper generally wrote, except such as from time to time by him were taken below for immediate use, and that that desk and contents were consumed; and that since the fire, the cash book had never been seen, in which were entered a great portion of the sales, the amount of which was upwards of $1800. The credit sales only were entered in the journal which was saved. The books that were saved happened at the time of the fire to be in the store which was in the lower story. The building was of brick, two stories and an attic, all of which were goods of the plaintiff; but the lower room only was used as a place of business and of sales, where the merchandize was exposed for purpose of sale.

Previous to the date of the policy sued on, the plaintiff had been insured by defendant for many years. A policy had been executed on his stock in 1844 for the sum of $6600. This had been yearly renewed, and the sum increased, and the last renewal was for the sum of $10,000, which continued in force down to February, 1849, when the policy in suit was executed on the same stock. The plaintiff offered this policy and its renewals in evidence twice. The first time at the commencement of the trial, and again at the close of the oral testimony, having proved its execution and the execution of the renewals; but the court excluded the same as irrelevant, to which decision of the court the plaintiff excepted.

The plaintiff having closed his case, the defendant asked the following instruction, which the court gave, viz :

"The jury is instructed that the plaintiff has failed to show a compliance with the condi-

Phillips vs. Protection Insurance Company.

tions of the policy of insurance in this case, and has failed to show a waiver of those conditions by the defendant; and therefore the jury is instructed to find for the defendant."

The giving of the instruction was excepted to. The plaintiff then took a non suit, and immediately moved to set the same aside for all the usual reasons; which motion was overruled and exceptions taken to that act of the court.

## SPALDING, for appellant.

I. It is a general rule of law, that the construction of a policy of insurance is to be liberal in favor of the assured. Hugs on Ins; 144-5; Park. on Ins. 30; Smith's Mer. Law, (Geyer's copy, notes) 412; 1 Dun on Ins. 161; 1 Bun. Rep. 341; 1 Sumner, 437, at page 440, the court says, that a condition in a policy is taken most strongly against the policy for whose benefit it is, where it imposes a burden.

II. Loss by blowing up with powder to prevent the spread of the conflagration, is a loss by fire within policies of insurance. 21 Wend. 367, on the point; 13 Johnson, 457, on the point; 11 Peters, 213, on the point.

III. The plaintiff complied with the conditions on his part, which were preliminary to the adjustment and recovery of loss, so far as giving notice was concerned.

First notice was reasonably given, according to the terms of the policy, which it requires to be given "forthwith." It was verbally given by plaintiff, who personally, in two or three days after the fire, called on the agent of the defendant, and said he was burnt out, &c. 10 Pick. 535. Verbal notice of loss sufficient, no other being required. 11 Miss. R. 278. "Forthwith," in policies, means a reasonable time under the circumstances. 3 Gill, 176, to same effect.

The great extent of the fire, the rush of persons who had lost to the insurance offices, thus creating an immense pressure of business, and the great mortality of the cholera, were sufficient excuses for the little seeming delay in the notice.

2 Phil. on Ins. 515 and 679, parol declarations, &c, admissible to show notice; also p. 751-2.

2. The defendant had actual notice by the inspection of plaintiff's house of business in ruins on the morning after the fire. Camden, defendant's agent, went to the spot and saw that he had been burnt out before the fires were extinguished. This is equivalent to a notice. 1 Green's Rep. 110. Officers of insurance company saw the ruins of the fire on the ground next day after the fire, and the court held that it was sufficient notice. 2 Phil. Ins. 515.

In marine policies, notices of abandonment is considered as effected if insurers lead the insured to think so, and to act accordingly. 2 Arnold, 1173-4; 3 Brod, & Bing. 97; 6 Moore, 288; 3 Majon, 27; 1 John. 295; 5 Gill and J, 235; 23 Pick. 355.

3. The notice was admitted and waived by the defendant, by making no objection on account of it; by taking up the claim, and going at large into it and investigating it, and then coming to a conclusion as to the amount of loss, and offering to pay it. This, under the circumstances, was admission of notice. The doctrine of waiver as applied to policies of insurance, is illustrated by the following decisions, and it applies to notice, and the case in 11 Mo. R. is not to the contrary.

25 Wend. 375. Insurer's refusal to return certificate to have it counted, precludes him from objecting to its form. And at p. 379, insufficiencies in the preliminary proof are waived by a refusal to pay on other grounds.

20 Pick. 389. Waiver of preliminary proof inferrible from insurer's relying on unseaworthiness alone.

6 Cowen, 404. Refusal to pay at all is waiver of preliminary proof. In this case there was no proof of interest, and not informal proof.

6 Har. and J. 408. Refusal to pay without saying it is for want of preliminary proof, is waiver of such proof.

Phillips vs. Protection Insurance Company.

9 John. 192. No objection made to want of preliminary proof is waiver. In this case there was no proof as to interest, and not informal proof.

1 John. 229. A case where formal objections to preliminary waived by circumstances, at p. 240, is the opinion of the court on this point.

2. Wend. 71. Waiver by acts or sayings of agents. 11 Mo. R. 278. Formal defects waived by insurer's refusal to pay on other grounds, and the waiver is evidence under averment of performance. 1 Phill. on In. 422.

2 Comstock's Rep. 53. Insured made out his account of loss, and presented it, &c. The company made no objection at the time, but offered to pay three-fourths of it; afterwards, being pressed for the whole, they refused to pay, objecting to the amount of loss furnished as insufficient: decided that the objection was no defence.

16 Wend. 401. Insurers may waive the right to preliminary proof by their silence, when the proof produced is not in conformity with stipulations—even waive its absence.

7 John. 315. Act of agent waiver, and admitted sufficiency of preliminary proof. He was agent to adjust as in the present case. 8 John. 307.

16 Wend. 401. Certificates and all may be waived by insurers. 11 John. 241; 1 Cushing Rep. 257, at p. 265, defective notice waived by acts of insurers, &c.

9 Wend. 163. Nearly four months delay in filing preliminary proofs occurred, in consequence of conduct of agent of insurers: held a sufficient excuse.

4. As to the time of the notice, if it be held that the court is to judge of that as a matter of law, yet this can only be on the facts found, which are for the jury; and the instruction given prohibits the jury from passing upon it. The case in Cushing considers time as waived as to notice as also form.

5. If the notice were given in time, it belonged to the jury to find from all the circumstances of the case, whether it were sufficient in substance; that is, whether it informed the insurers of the loss, &c.

6. In Marine Insurance, notice of abandonment is a mixed question of law and fact, as regards the question whether it is in time, and when the facts are not agreed, it should be submitted to the jury. 2 Arnold's Ins. 1164, note; 22 Pick. 191; 4 Mass. 668; 4 Dallas, 272, 7 Cranch 506; 6 Cranch 268, 338.

IV. The plaintiff complied with the conditions of the policy in filing with defendant a particular amount of his loss, which, by the terms of the policy, is to be done as soon after notice as possible, to be signed with his own hand and certified by his oath or affirmation. His first statement and account of loss was delivered to defendant 9th June, 1849.

1. As to form of it, sufficient.

23 Wend. 525. Limitations in policy, requiring amount of loss, liberally construed in favor of assured.

7 Cowen, 645. All the books and papers of insured were burnt. Held, a general statement of loss sufficient. The insured merely swore to the amount of loss and circumstances.

1 Harrison, 410, (N. J.) Books and invoice destroyed by fire. Insured not bound to furnish bills of parcels and pass books of journeymen, &c., to the office.

2. As to time of delivering the account of loss. It was delivered some twenty days after the fire. This time was not more than sufficient for him to make out his account under the circumstances. 1. His books and papers were chiefly burnt. 2. Goods to the amount of 5000 or 6000 dollars, more or less damaged, were saved; these had to be taken to a new place of business and inventoried, &c. 3. His stock on hand at the time of the fire had to be proved, as near as possible, by his clerks, the only persons who had been present at a previous taking account of stock, which account had been burned, and one of the clerks, absolutely necessary, had left him and lived in the country. It appears from the testimony that the statement for defendant of the loss was delayed some time for *him*. 4. The cholera was raging in the city, and on the 4th of June, 1849, the plaintiff's child was attacked by it and was dangerously sick for some days, and then the doctor in attendance ordered him to be taken to the

Phillips vs. Protection Insurance Company.

east to save his life. 5. The cholera and the fire rendered it next to impossible to transact business.

11 Mo. R. 278, above referred to ; 9 Wend. 163. Preliminary proof postponed from 17th January till 7th May ; excused from conduct of agent, which operated as waiver.

This document, delivered to the defendant 9th June, 1849, embraced the inventory and value of goods saved ; the affidavits and certificates of clerks, &c., as to the amount of stock in the store some eighteen months previous, being the last time the amount of stock had been taken, amounting then to upwards of $18,000, concluding with the sworn statement of plaintiff, setting forth—

1. Correctness of inventory and stock saved ;
2. That no other insurance existed on stock ;
3. The value of the stock, $16,500 ;
4. That the same belonged to him alone ;
5. That the building was occupied by him, exclusively, for store, &c., to sell his stock, &c·
6. That the fire originated on a boat and thence communicated to the building, &c.

The sworn statement of plaintiff was at the foot of the whole, and referred to the preceding parts of it, and was signed in his own hand, all being one document, attached together, and thus delivered at the office of defendant.

3. The written portions of the policy were not included in the statement filed 9th June, 1849 ; nor does the policy require them as a condition precedent to payment or adjustment. This was, however, afterwards, and before suit was brought, given in an affidavit of plaintiffs, so that if it were a pre-requisite to the action it was given.

V. If the first statement delivered by plaintiff to defendant in June, 1849, was insufficient in form or substance; yet the subsequent one signed and sworn to and delivered by him to defendant on the 20th day of September, 1849, as supplemental to the other, is, together with the other, ample. This contains a more particular account of the origin of the fire, and also the written portions of the policy.

1. The delay in filing this is accounted for, 1st, by conduct and assent of agents and defendant ; 2, by the pestilence which had invaded the family of the plaintiff, and compelled him to leave the city for a time with a sick child ; 3, general interruption of business. The policy does not require the affidavit or sworn statement of the insured to be filed *forthwith*, and under the circumstances of general alarm at the frightful mortality in St. Louis, and sickness of plaintiff's family, &c., it was delivered in time.

It was attended to and made out as soon after plaintiff's return from the east as it reasonably could have been. It was only then that he was informed that the company would not pay. Before that time defendant had offered to pay, but objected to the amount claimed.

VI. The certificate of the magistrate, required by the policy was sufficient.

1. It was furnished in time—several days before suit brought, 29th Oct., 1849.

This policy does not require it to be furnished forthwith, but only before payment is required. 10 Pet. R. 507 ; certificate was furnished *five years* after the loss, and held sufficient, at page 513 court says, "it is required in a reasonable time, and not forthwith."

2. The condition or requirement in the policy is of "a certificate under the hand of a magistrate or notary public most contiguous to the place of the fire, and not concerned in the loss as a creditor, or otherwise, or related to the insured or sufferers," &c. The certificate produced was of the magistrate most contiguous to the fire. No other magistrate had his office as near as Kretchmar, the certifying justice. But there was a notary, a foreigner, who held a commission as notary, but who was not known as such officer generally, whose office was nearer.

The above words admit of a double construction. They may mean that the insured shall produce the certificate, either of the nearest *magistrate*, or, of the nearest *notary*, leaving him the choice between the two ; or, they may mean the nearest office, whether magistrate or notary.

The words being of double meaning, are to be taken most favorably for the insured. (See

18

Phillips vs. Protection Insurance Company.

cases above cited, as to construction of policies.) 1 Greening Rep. 110, 115; 13 Maine (1 Shepley) 265. These cases raise this point, but leave it undecided.

3. The form of the certificate is good, 16 Wend. 385, as to form; 25 Wend. 374-5, place of business of magistrate is nearest, as being most contiguous to the place of the fire. The notary, Coste, was a foreigner, just commencing business, and unknown. Such an officer could not be within the meaning of the policy; but an officer who from his acquaintance and knowledge, could certify as to the required facts. What could he know, a foreigner, scarcely acquainted with the language of his newly adopted country, and unknown to everybody?

VII. The policy provides that the assured "shall, if required, submit to an examination under oath, by the agent or attorney of the company, and answer all questions touching his, her, or their knowledge of any thing relating to such loss or damage, or to their claim thereupon, and subscribe such examination, the same being reduced to writing, and until such proofs, declarations and certificates are produced, and examination, if required, the loss shall not be deemed payable."

On the 19th June, 1849, plaintiff left with his family and sick child for the east, and it was not till he was going to the boat, with his sick child in the carriage, that notice was served on him to submit to an examination under oath. He did not, however, stop; but went on east, and returned about the 12th of September, and then went personally to the agent of defendant, and offered to be examined. The agent told him to call the next day. He did so; and was then notified that they would not examine him, nor pay.

1. Now, as to this requirement, the policy does not state that it is to be complied with "forthwith," nor does it create a forfeiture if not complied with at once; nor does it leave it to be inferred that there is a forfeiture of all right. It merely declares that until the examination is submitted to, if demanded, the loss shall not be payable.

2. But even if it were necessary to submit to the examination immediately, in order for the assured to preserve his rights, yet this the courts would hold to mean, within a reasonable time, under the circumstances; and the plaintiff offered himself for examination within a reasonable time. 1. When starting, and in the act of going with a sick member of his family to the sea coast, he was not bound to stop to be examined; 2, especially when the cholera was then so fatal, and his wife was at the same time ailing; 3, nor was he bound to return to present himself for examination till the pestilence had ceased, and his duties had been discharged to his family.

4 Dall. 272. A delay to give notice of abandonment for five months did not work a forfeiture of the right to abandon, it appearing that during a considerable part of that time business was suspended by reason of the epidemic in Philadelphia, viz: the yellow fever.

By the law as established by the general current of decisions, the notice of abandonment must be given forthwith, or in a reasonable time. 2 Phil. 382.

VIII. The suit was properly commenced without waiting sixty days from the time of filing papers. The Insurance Company waived time, by expressly declaring in their notice to the plaintiff and to his agents that they would not pay at all, in any event, and they had their attorney already employed, and would resist his claim.

6 Har. & J. 408. Right of action immediately accrues, if insurer absolutely refuses to pay at all events.

3 Bing. 304. Refusal to adjust loss (when the policy made the loss payable three months after adjustment)—held that suit could be brought at once.

12 Wheat. 383. Columbus Insurance Company vs. Cortlett. The provision in this policy was that "the loss was to be paid in sixty days after proof and adjustment thereof." The court says, "from the very terms it can only apply to the case where there has been proof of loss, also an adjustment. If proof of loss has been offered, and no adjustment made, as in case of a disputed loss, the claim has been supposed not to apply. The underwriter is then supposed to waive the privilege." 1 Wend.

IX. The instruction given by the court, which compelled a non-suit, is erroneous, in taking

the whole matter from the jury. They were the proper judges whether the facts were such as waived the preliminary proofs, or the insufficiencies and informalities of them.

20 Pick. 389: Jury may infer waiver from circumstances; 3 Gill. 176—Jury to judge under all the facts.

2 Phil. Ins. 588—"This court determines that a warranty must be complied with; but the jury generally determines the fact of compliance."

10 Peters 507—"Whether certificate was procured in reasonable time is mixed question of law and fact;" 2 Pet. 26; 10 Peters.

X. The conduct of the agents of defendants was a waiver, or at least was evidence of a waiver of the powers and technicalities required by the policy, as 'the account of loss, and preliminary proofs, if there were defects and inequalities.

See the authorities already cited, as to the waiver, under the head of notice above.

On verbal notice being given, the agent, Howard, entered upon the examination of the claim —went to plaintiff's counting room, looked into his books and papers saved from the fire, &c., &c., and after a long course of examination, and many interviews with plaintiff, offered to pay the loss, proposing a sum, which the plaintiff supposed not equal to the damage sustained, and declined receiving. The time of giving the notice, the court, under the circumstances, cannot pronounce too late, as the notice was received and acted on by the defendant, as sufficient information of the loss. The preliminary proofs were subjects of waiver.

The acts of the agents in this case are presumed to be authorized, and are therefore the acts of the company; especially as this is a non-resident corporation. 7 John. 315.

XI. The old policy was entirely excluded from the jury.

It was between the same parties, on the same stock of goods, in the same building. It was evidence tending to show that stock to have been previously so large that it was proper to insure on it $10,000.

It also showed that the stock and business of the plaintiff had been increasing inasmuch as the amount insured on the stock had been increased. Several years had elapsed during the existence of the old policy, while the plaintiff's store was open to the public, the insurers themselves being a part of that public; the increase of the stock must, if it existed, have been visible and notorious, and a matter in dispute here was the amount of the stock at the time of the fire.

XII. In this case there was, 1st. Waiver of formalities by examining the claim upon the notice and coming to a conclusion, and offering a sum as being the loss. 2d. There was a further giving of time at that period in the written notice, served on the 19th June, which at that date says compliance with the condition is required. 3d. Plaintiff then undertook to comply, and the delay is excusable under the circumstances, so that his offer to comply in September is the same as if made June 19. 4th. The act of the defendant then, in refusing to waive compliance, was a refusal to have the conditions complied with, or to receive them. 5th. This refusal to receive compliance, and also to pay anything at all events, released plaintiff from the necessity of complying with conditions, and authorized immediate suit.

### AUTHORITIES.

As to blowing up with powder—21 Wend., 13 John., 11 Peters.

Notice—10 Pick., 11 Mo., 3 Gill, 2 Phil. Ins., 1 Green., 2 Comstock; 11 Wheat. 383.

Waiver—25 Wend., 20 Pick., 2 John., 6 Cowen, 6 Har. & J., 9 John., 1 John., 2 Comstock 7 John., 2 Comstock.

Account—23 Wend., 7 Cowen, 1 Harrison.

Certificate, its time, &c.—10 Peters, 1 Green., 13 Maine.

As to form of certificate—16 Wend., 25 Wend., 8 Cowen.

Waiver of certificate—16 Wend.

As to covenanting articles—6 Har. & J., 3 Bing.

GAMBLE & HILL, for appellants.

I. The plaintiff had not complied with the 10th condition of the policy, and is barred from maintaining this action for that reason.

1. There was no particular account of loss furnished by plaintiff.

2. The account he furnished defendant was only a gross estimate or guess of plaintiff.

3. The verification of the account of loss, is wholly uncertain and insufficient. Plaintiff made two affidavits, but in neither of them does he swear to the amount of his loss; and the account does not state the amount of plaintiff's loss. Plaintiff only swears that the amount saved in military goods and music, is just and true; that the statement or account of loss was made by an examination of all books and papers appertaining to said stock of goods on hand, and that the fire consumed a great portion of his stock, without saying what portion.

4. Plaintiff has sworn to no statement so that a charge of false swearing could be maintained, as to the amount of loss.

5. His account of loss was not furnished as soon as possible, after the notice, which was required to be given forthwith; and plaintiff has neither offered or shown any excuse for his failure to comply with the requirement.

II. The loss was not payable until 60 days after the proofs of loss were furnished according to the conditions of the policy.

1. The proofs consist of the notice, account of loss, affidavit of plaintiff verifying it, declaration of plaintiff on oath as to other insurance, &c., certificate of magistrate or notary public; and production of books and vouchers, and a submission to an examination on oath, if required.

2. No certificate of a magistrate or notary public was furnished 60 days before suit; and this was a bar to the suit.

3. The certificates furnished five days before suit were wholly defective—the magistrate having failed to certify that they made due enquiry into the value of the property destroyed.

III. Plaintiff's attempt to comply, by furnishing additional proofs of loss on 21st Sept., cannot help out his case, for they were not furnished 60 days before suit, and they cannot apply to this suit.

1. It is remarkable that plaintiff, though acting under the advice of eminent counsel, did not, in any of his proofs, original or supplemental, give defendant a particular account of his loss; and on this point all the proofs are still defective.

IV. On the 19th June, '49, 10 days after plaintiff had furnished his defective and insufficient proofs of loss, defendant gave him notice to submit to an examination on oath, and produce his books and vouchers; which he failed to do or excuse being done until the 13th September, when defendant informed him it was too late—that he had forfeited all claim; and this neglect was a bar to all claim by the plaintiff on his policy.

1. The defendant is entitled to have all the proofs of loss furnished, as soon as possible after the fire.

2. The excuse that cholera was in the city, is only good for the time it was here, if it be any good excuse; and the cholera ceased to be an epidemic on the 25th July, '49.

3. By plaintiff's own neglect, under a written notice, the whole benefit of an examination on oath was lost; and this neglect is fatal to plaintiff's case, because it was under an express notice to comply.

V. The 10th condition of insurance requires the certificate of the nearest magistrate or notary public; and the certificate of the nearest notary was not produced.

1. The nearest officer should have certified, and he was the only person authorized to certify. Felix Coste was that officer, and he did not certify. 1 Green, 100; 1 Sepley, 265; 2 H. Blk., 577; id. 254; Hamm'd Fire Ins., 109, 110; 2 Peters, 25; 7 Con., 462; 13 Maine, 265; Park Ins., 285; Hamm'd Ins., 115; 1 Tenn. R., 12; 1 Rolles Abr., 415; Dougherty vs. Neal, 1 Land.

Phillips vs. Protection Insurance Company.

216, Herketh vs. Gray, Sayer 185; Gunt vs. Punell, 5 Vin. Abr. 207; 1 Tenn. R. 642, 644, 200; Appleton vs. Crowningshield, 3 Mass. R., 443; Bayley vs. Francis, 14 Mass. 453; Worsley v. Wood, 6 T. R. 710.

VI. The acts acquired to be performed by the proposals or conditions annexed to the policy, and conditions precedent, without the performance of which, the plaintiffs cannot recover his loss, and performance was averred in the plaintiff's petition, and having failed wholly to prove a performance; he could not recover. 2 Stark Ev. 225; Hamnd. Fire Ins., 14; 12 Wend. 452; 9 Wend. 165; 1 Tenn. R., 12; 2 H. Blk., 577; also cases above cited.

VII. Plaintiff was required to perform such condition, and a failure in any particular, is fatal to the action.

VIII. No excuse can be offered in lieu of performance, and it will not avail the plaintiffs, although he show that he has done every thing in his power to comply with the conditions, but has been prevented by the wrongful act of a third person. 1 Hamd. on F. Ins. 110.

XI There has not been any acceptance of the proofs furnished by the plaintiff as a compliance with the 10th condition.

This acceptance is usually called a waiver of preliminary proofs.

1. Defendant on 19th June, gave plaintiff notice in writing that he was required to comply with the conditions of his policy.

2nd. On the 13th Sept., defendant gave plaintiff a further notice, that he had failed to comply with policy, and thereby forfeited all claim.

3. The filing of plaintiff's act on 9th June, and the efforts made by defendant's agent to examine into the loss, are not a waiver nor acceptance of the proofs; for during the progress of that examination and at the point when defendant required the examination of plaintiff on oath and the production of plaintiff's books and vouchers, defendant gave plaintiff express notice that he must fully comply with all conditions; and this was only ten days after the proofs had been filed, when the office of the company was filled with a multitude of the same kind of cases, arising out of the great fire.

4. Plaintiff did not regard the partial examination made by defendant's agent, between 9th and 19th June, interrupted as it was by the failure of plaintiff to submit to an examination on oath, as a waiver or an acceptance by defendant of proofs of the loss; for long afterwards, on the 13th Sept., 21st Sept., and 29th Oct., the plaintiff attempted to comply with the conditions.

5. Defendant, from the first, required performance; and the 13th September, distinctly took the ground, that plaintiff had forfeited by his failure to comply in all respects with the conditions of insurance; and all the proofs subsequently filed by plaintiff in the office of the company, were received under protest.

X. The agent of defendant had no power to waive preliminary proofs, but by adjustment. If defendant's agents stood upon the contract, refusing to pay, or received the proofs without objection, and still refused to pay, this would not be a waiver. The company, by resolution of the board, can waive, or the agents can adjust, and either would put an end to enquiry, in regard to proofs, but nothing of this sort has happened in this case.

IX. The plaintiff relies on the case of Kyle vs. St. Louis Ins. Co., 11 Mo. R., to sustain his view of the doctrine of waiver, and its application to this case; but there is no resemblance, either in fact or principle between Kyle's case and this one.

1. In Kyle's case there was a resolution of the board of directors of the company to employ counsel to prosecute him for arson, and having received the proofs of loss, without objection, and having refused to pay Kyle on another and different ground; this was held to have been a waiver of defects in the proof, and to bar the company from raising such objections for the first time, on the trial.

In this case defendant objected, at once, to the proofs, and plaintiff has never complied in form or substance.

2. The other cases cited by plaintiff, are in 1 Story and 1 Sumner, 440; 20 Pick., 396; 1

Phillips vs. Protection Insurance Company.

Johnson, 229; 9 id., 192—the last three on marine policies and the first upon the construction of the clauses in policies. These have no applications to the case at bar,

The case of Inman vs. Insurance Co., 11 Wend., only decides, that forthwith in the policy, means due diligence, under all the circumstances of the case. The case of Ins. Co. vs. Lawrence, 10 Pet. and Johns., are not applicable, being founded on a distinct and different state of facts; and they decide a different principle from the one involved in this case.

XII. Plaintiff urges that defendant's agent offered a certain amount on the 19th June, which plaintiff refused to take, and claim this to be a waiver; and that this was after examination of plaintiff's books and accounts, and the whole matter. This involves a consideration of the duties of an insurance agent, in the adjustment of losses. It cannot be held a waiver for the agent to look at the papers, or do any thing that was necessary to examine the loss, for these are his duties. On examining the proofs and the accounts, defendant's agent says, "you have lost $3000." Plaintiff insists he has lost $10,000. Defendant's agent then tells him to make out his proofs according to the policy, and show his books and submit to an examination. This is in accordance with the conditions of the contract and with the duty of the agent and the custom of the office, and the doctrine of waiver cannot apply. This examination was made by defendant as if no account, had been furnished; and it is always made, and has nothing to do with the proofs, unless an adjustment results from such examination.

1. It is the right of def't to examine into the claims of loss presented, and such examination will not forfeit the rights secured by the policy, whether the defendant suggest or state the result of the examination or opinion as to amount of loss.

2. That it is illogical and absurd to say that an examination and offer of an amount found or supposed by defendant's agent to be lost, is a waiver of the performance of conditions precedent; or, that the acts of defendant's agent required by his employment, shall be held to dispense with and absolve plaintiff from a performance of the contract on his part.

XIII. A waiver can only cure defects in the form or substance of the proofs, and does not supply a paper required by the condition. A waiver cannot make a certificate.

XIV. The plaintiff contends that the refusal of defendant to pay the loss, authorizes a suit to commence immediately; but this rule can only be applied to cases where the necessary proofs have been furnished according to contract. In this case the proofs were never furnished according to the condition before the suit.

XV. The facts being found, the question diligence as to serving the notice of loss, and making the proofs is one of law for the court; 12 Wend., Inman vs. Western Fire Ins. Co., 460-1; Comyn's Digest, question of reasonable time is one of law; 1 Bos. & Pul., 388; Rankin vs. Arner. Ins. Co., 1 Hall 619; Hunst vs. Royal Ex. Ins. Co., 5 M. & C., 47. A laches of five days after intelligence of loss and before notice of abandonment was given, was held by court to have been too long; 1 Stark. 452, note q.

The court below therefore, had a right, if the facts warranted it, to give the instruction that was given.

NAPTON, J., delivered the opinion of the court.

The record of this case presents several questions, which we shall notice in order. 1, Was the notice of loss in time? 2, Was the statement of loss filed on the 9th June, sufficiently particular? 3, Was the plaintiffs failure to submit to an examination on the 19th June, as required by the company, a bar to his claim? 4, Were the certificates of Butler and Kretchmar, and the other preliminary proofs filed on the 29th October, a compliance with the conditions of the policy, and if

not, had these conditions been waived. 5th. Could the action be brought within less than sixty days after completion of preliminary proofs and adjustment of loss? It was doubtless on one of these grounds that the non-suit was ordered, and as they are all relied on here, they will each be examined.

1. This policy requires notice of loss to be given forthwith; and this expression is understood to mean with due diligence under the circumstances of the case. The written notice was given twenty days after the fire. There was proof, that the plaintiff called at the office of the company, a day or two after the fire, and told them "he was burnt out;" that an agent of the company was seen examining the ruins, before the fire fire was extinguished—that when the written notice was handed in, the plaintiff was informed that the pressure of business was such, that his case could not be immediately attended to, but would receive attention in its turn. Subsequently, the claim was taken up and examined—various interviews between the principal agent of the company and the plaintiff were had relative to the claim, and various examinations were made of the plaintiff's books, which resulted in an offer on the part of the company to adjust the loss at a sum considerably less than that claimed by the plaintiff.

A distinction was taken in Kyle's case (11 Mo. R. 289) between the notice of loss and the preliminary proofs, which we are inclined to think was not well considered. It seems to be intimated that there could be no waiver of the notice, at all. It is very difficult to lay down general rules on a question of this kind which will be applicable to varied circumstances, and it is better that such case should stand upon its own peculiar facts. We are not disposed to say, that in all cases, and under all circumstances, the mere reception by the company of a notice, without objection at the time, and the additional fact of directly proceeding to an investigation of the claim, would be conclusive evidence, that the notice was a timely one and that the company waived any objections to the claim on this ground. It might be, that the importance of an earlier notice, would be for the first time ascertained in the course of the investigations, and if it was then insisted on as a bar, we could hardly infer a previous waiver.

In the present case no such difficulties occur. The plaintiff files his notice about twenty days after the fire (to say nothing of the verbal notice) and he is told substantially—"Your claim cannot be examined at this moment—you will have to wait a few days—the great pressure of business occasioned by the fire is such that months will scarcely be sufficient to adjust all the losses." Is it not absurd to talk about a notice

being too late, when the company for whose benefit it is given, declares in effect that it is too early for their convenience—when it is subsequently taken up and investigated, no objections at any time made to it for want of being in time, and an ultimate offer to pay a sum which the company believed sufficient to cover the actual loss ?

We cannot suppose, that it was upon this ground, the nonsuit was ordered.

2. The next question relates to the sufficiency of the proofs of loss, offered on the 9th June.   These proofs were as follows :

First. A list of military goods, music and musical instruments saved from the fire with their value at invoice prices, the total of which is $5919 33.   Accompanying this list, was a certificate of A. Osgood, dated May 25, 1849, stating that he had assisted Nathl. Phillips in making the forgoing inventory, and had occasional opportunity of referring to his original invoices, and was satisfied that it was a correct account of the stock saved.   No deduction being made for injuries in removal, which he thought considerable.

Second. A statement in these words :  " Mr. Phillips' last inventory showed his stock at cost to be over $18,000—he believes at the time of the fire it was not more than $1500 less, say $16,500.          $16,500

Amount of stock saved  at cost ............. $5,919 33
On which damage is not less than 10  per cent.,    591 93    $5,317 40

————————————
$11,182 60"

Third. A statement as follows:  " N. Phillips purchased from December 1, 1847, to May 17, 1849, subsequent to last inventory—the amount of which is $15,523 98.   Appended to this is the following: " N. Phillips' last inventory consumed by fire, as shown by his statement rendered and which is hereby proved by the clerk who assisted in taking it, was $18,000—the above is the amount of purchases subsequent to that up to the 4th May, as his journal will show, and a part of his original invoices saved will prove."

Fourth. A certificate of G. J. Murray, proving that the last inventory was $18,000.   A certificate of N. Phillips, taken before a magistrate, stating that the foregoing statement is just and true, that the same has been made by a certificate and diligent examination of all books and papers appertaining to the subject of statements, namely, the stock purchased and the goods on hand, and he, the said Phillips, verily believed the said statement to be correct and true.   Another certificate of Osgood is added, to the same purport, and an additional certificate of Phillips as to the causes of the fire, &c.

Phillips vs. Protection Insurance Company.

The most serious objection to this statement is the absence of any account of sales from the date of the inventory in 1847 to the fire. The stock, at the date of the inventory, is stated to have been $18,000 —the purchases since then are estimated at $15,523 98—and the stock on hand at the date of the fire is stated at $16,500. Without an account or estimate of the goods sold, it is impossible to arrive at the stock on hand at the time of the fire and this is omitted. It is true, that we may infer from the statement, that the plaintiff had sold since December 1847, when the stock was $18,000, an amount sufficient to cover all the additional purchases (which were $5,523 98) and as much more as would reduce the stock to $16,500. But as the plaintiff had put in the estimate of his purchases since the inventory, he ought, of course, to have added the sales and a plain authenticated calculation would then have shown the actual amount of goods on hand at the time of the fire. Without this, we are left to conjecture, by what means he arrived at the result, whether it was merely conjecture or founded on data not likely to mislead. It may be, that the books which contained the entries of sales, were burned or lost—or it may be, that no such books were kept. If so, this could have been stated and ought to have been stated.

But it is unnecessary to dwell on this defect of proof. The object of such proof is to lead to a satisfactory adjustment of the loss, and if the proofs are defective, it is the duty of the underwriters to point out the defects, that they may be remedied. It does not appear, that any such objections were made, although it is probable that this defect was one of the causes that induced the company to require the plaintiff to submit to a personal examination, under oath, and to bring forward his books and papers, and this leads us to a consideration of the next point, which is doubtless the principal cause of this controversy.

3. One of the conditions of the policy made it incumbent on the plaintiff to produce his books of account and other proper vouchers, and submit to an examination under oath, if required by the agent of the company, and answer all questions touching the subject matter of the insurance which might be propounded. The same article declared that until such proofs, declarations and certificates were produced and such examination submitted to, if required, the loss was not payable. On the 19th June the agent of the defendant notified the plaintiff in writing that he must produce his books and papers and submit to an examination on oath. The plaintiff failed to submit to such examination, at the time required and the question is whether such failure is fatal to his claim. There can be no doubt of the right of the company to insist on this compliance with the terms of the policy, and if the refusal of the

plaintiff was without excuse or justification, there is certainly an end to his claim.

There is no dispute as to the facts in relation to this matter, and we may, in considering the propriety of the nonsuit ordered, assume them to have been substantially these : The cholera was on the 19th June epidemic in St. Louis. The plaintiff's child had been attacked on the 5th with this disease, had recovered, but occasionally relapsed, and medical advice was given to remove the child to another climate. The plaintiff's wife was also indisposed. Under these circumstances a trip to the east was resolved upon. On the evening of the 19th when the notice of the company was served, the plaintiff, with his wife and child, was in a carriage, on his way to the steamboat, which was about leaving that evening. The plaintiff disregarded the notice, proceeded to the boat with his family, traveled as far as Boston or its vicinity and did not return until the 12th September.

We are not called upon to determine, as a question of law, that the facts above stated constituted a legal excuse or justification to the conduct of the plaintiff. But we are unable to see how the court below could undertake as a matter of law to say that there was no sufficient apology for the plaintiff's conduct. We cannot suppose that it was incumbent on the plaintiff to obey the requirements of the company, at an unreasonable time and under every condition of circumstances. The question, upon which this point must turn, is one of fact and intention, to some extent. Was the conduct of the plaintiff, in declining the examination at the time proposed, in good faith, for the purpose of rescuing his family and himself from the dangers of a raging pestilence—or was it a mere pretext to postpone an investigation until the chances of detecting fraud were diminished or destroyed? We should be unwilling to say that a person should be compelled to risk life and health, and the lives of his family, at the forfeiture of so much as is here insisted on. Men are differently constituted in this respect—to some a pestilence presents no terrors—others again regard flight as no additional security against the disease. Some have not the means of escape, however much desired and others are content to abide the will of Providence, in the position where duty, or interest or necessity has placed them. If the plaintiff honestly deemed it necessary for the safety of his family, that he should remove from the city, it would scarcely accord with the dictates of humanity or justice to hold such removal a forfeiture of his policy.

We do not attach much importance to the fact, that the absence of the plaintiff was continued several weeks after the cessation of the

cholera as an epidemic. It is not to be expected that the plaintiff after incurring the trouble and expense of removing his family to the eastern states, would return on the very day or week of the abatement of the pestilence. Such a course would not be prudent or rational. Nor do we think it conclusive against his honesty, that he removed his family to a remote point, instead of some place in the neighborhood, beyond the reach of the disease and affording greater facilities for a speedy return. There may have been conveniences attending a sojourn at the point selected, arising from considerations not apparent to us, and but which, if explained, would readily be appreciated. The question at last is one of intention, and it is for the jury to say, after all the facts are before them, whether his avowed intention was the true one, and only one, and whether the absence was unreasonably protracted beyond the period necessary to carry out the avowed purpose of the trip.

4. When the plaintiff returned on the 12th of September, he appeared at the office of the company and offered to comply with the requisitions of their notice of the 19th June. The agent deferred an immediate answer to this offer—but on the following day informed him that he was too late—that his claim was fraudulent and would not be paid—that they waived none of their rights, but stood upon them all and insisted on a strict compliance with all the conditions of the policy.

The plaintiff filed at a subsequent day, additional statements and proofs, and among others, the certificates of two magistrates, Butler and Kretchmar, relative to the causes of the fire and the amount of loss, and the honesty of the claim. No notice was taken by the company of these papers. They had already advised the plaintiff, that their determination was not to adjust or pay the claim. It is now objected on the trial, that these additional papers filed in October, and after refusal of the company to adjust, are still defective—that the proofs of loss are not so particular as the policy requires—and that the certificates of the magistrates are not sufficient in form and in other respects objectionable.

We cannot see any propriety in such objections. The company put themselves on the refusal of the plaintiff to submit to an examination under oath on the 19th of June, as a complete bar to the claim. If they were right in this, there was an end of the matter, but if they mistook their rights on this point, their subsequent conduct clearly dispensed with additional proofs. *Cui bona*—for what purpose was the plaintiff to go over and perfect his proof? He is informed in writing, that the company had determined not to pay—that lawyers had been employed and they were prepared, as the agent observed "to give him

a good fight." What difference could it make to the company, if the bundle of papers filed in their office in October, had been a bundle of blanks? The object of these preliminary proofs is to lead to an adjustment, to furnish the underwriters with all the information they may require to show the loss and its amount, but if they have determined not to adjust the claim, not to pay any part of it, of what avail can it be, for the insured to trouble himself further with perfecting his proofs? How are the rights of this company affected by the fact that a notary public, an unnaturalized foreigner, had his office fifty or one hundred yards nearer to the place of the fire than the two justices, Butler & Kretchmar, who signed the certificate? These certificates are provided for in the policy, as well as all the other modes of proof, as a degree and form of evidence which by mutual agreement is to be regarded satisfactory to the underwriters, and sufficient to form the basis of a private adjustment. The underwriters have a right to insist upon it, if they will—but they may waive the whole of it. When they refuse to receive it or examine it and declare their determination not to pay, in any event, unless compelled by legal coercion, such conduct can be viewed in no other light than a waiver of the forms of proof provided for in the policy. It matters not, that they in terms say that they waive nothing, we look to their acts to ascertain whether there is a waiver. Any other construction of such acts as these, would lead to the grossest injustice. Let us suppose the certificates of the two magistrates, produced on this occasion, to be subject to the exception taken. These certificates are not required to be presented at any particular time. If objections had been made to them on the ground now indicated, it may be that the error could have been readily corrected. It may be, that the plaintiff could as readily have produced the certificate of Coste, the foreigner, who lived in the second story of a tenement in the vicinity of Phillips, as he did those of Butler & Kretchmar. But the plaintiff was not told of any such objection—he was not informed that the mode of proof was unsatisfactory or the certificates not such as the policy required—but he was informed, that his failure to answer interrogatories on the 19th June was the cause of the refusal of the company to pay. Upon this ground, and on this ground alone, the company rested their denial of compensation. Upon this ground they insisted that the matter was closed—that the plaintiff had forfeited all rights under his policy—that the advantages expected to be derived from an examination of his books and papers and of himself on oath on the 19th June could not be obtained by an examination at the period when he offered it, and consequently

they had closed the door to all chances of a private and amicable settlement between the parties.

This conduct and this language emphatically called upon the plaintiff to prove his claim in a court of justice, according to the forms and principles of the general law of the land and distinctly waived the forms and modes of proof which the policy, called for as a preliminary to a private adjustment.

5. That the 11th article of the policy says that "payment of loss should be made in sixty days after the loss shall have been ascertained and proved and the proof received at the office." It is obvious that this clause applies to cases of an adjustment by the officer and to no other. Where the company refuse to adjust, a literal compliance with the article would prove a bar to suit at law. The loss in this case was not ascertained and the company refused to receive the proofs offered. There is no objection to the action on this ground.

We shall reverse the judgment and remand the case for trial. Judgment reversed.