NORWICH & N. Y. TRANSP. CO. (FLINT v.). See Cases Nos. 4,873 and 4,874.

━━━━

## Case No. 10,363.

NORWICH & N. Y. TRANSP. CO. v. WESTERN MASSACHUSETTS INS. CO.

[6 Blatchf. 241;[1] 34 Conn. 561.]

Circuit Court, D. Connecticut. Nov. 24, 1868.

MARINE INSURANCE—WAIVER OF PROOFS OF LOSS —FIRE PERIL.—RULE OF DAMAGES.

1. Where a policy of insurance, against loss or damage by fire to a vessel, contained a provision that the insurers should not be bound to pay until proper proofs of loss had been presented to them, and also a provision that no suit should be brought on the policy until after sixty days from the presentation of such proofs, and the insurers, after notice of a loss, inquired into the circumstances, and then, before the plaintiffs were bound to present proofs of loss, denied all liability under the policy, and refused to pay the loss, on the ground that the loss was the result of a marine, and not of a fire, peril, and no proofs of loss were presented, and a suit was brought on the policy before the expiration of sixty days from such refusal to pay, *held*, that the insurers had thereby waived the proofs of loss, and also the benefit of the provision in regard to the sixty days.

[Cited in Bennett v. Maryland Fire Ins. Co., Case No. 1,321; Timayenis v. Union Mut. Life Ins. Co., 21 Fed. 227.]

[Cited in Girard L. I. A. & T. Co. v. Mutual Life Ins. Co., 97 Pa. St. 24; State Ins. Co. v. Maackens, 38 N. J. Law, 571; Western Home Ins. Co. v. Richardson (Neb.) 58 N. W. 599.]

2. Where a steam vessel, insured against loss or damage by fire, was damaged by a collision, so that the water rose to her furnaces, and forced the fire out, and she was thereby set on fire, and, after burning for some time, she sank, *held*, that the insurers were liable, on the policy, only for such loss as naturally and necessarily resulted from the fire.

3. The rule of damages, in such a case, stated.

This was an action at law, founded upon a policy of insurance against loss or damage by fire. The case was tried before SHIPMAN, J., and a jury, and resulted in a verdict for the plaintiffs. The defendants now moved for a new trial, on the ground of alleged misdirection by the court, in its charge to the jury. [As there are a number of other cases depending in this court upon similar

━━━━

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

policies growing out of the loss of the steamer in question, it will be well to make a full statement of this one now before us, and settle, so far as this court is concerned, the legal principles applicable to the main features of the controversy.][2] The policy was for $5,000, and was issued by the defendants [and in force at the time the loss occurred.][2] The subject insured was the steamer City of Norwich, owned by the plaintiffs, and running between Norwich, Connecticut, and the city of New York, through Long Island Sound. On the morning of the 18th of April, 1866, while on her regular trip to New York, she met with a disaster, out of which the claim for indemnity set up in this suit arose.

At the trial, the plaintiffs, after proof of ownership, gave evidence tending to prove, that, on the trip named, the steamer came in collision with a schooner; that the stem of the latter cut her down below the water line on the port side, forward of her boiler, making a large breach in her; that through this breach she commenced taking in water, and was rapidly filling; that, in ten or fifteen minutes after she was struck, a fire broke out on board, caused by the water, which flowed into the breach made by the collision, rising to the furnaces, and blowing the fire out upon the surrounding woodwork, which made rapid progress, and soon enveloped her upper works in flames; that, in half or three-quarters of an hour after, she sank in twenty fathoms of water, going down bow foremost, ending completely over in her descent, and finally resting on the bottom with her keel up; that she was afterward raised, taken to New York, and repaired by the plaintiffs; that she was damaged, in all, to the extent of $84,000; that, of this amount, $69,000 was the natural, necessary, and inevitable consequence of the fire; that $15,000, and no more, was chargeable to the marine disaster; that, though, from the breach caused by the collision, she was rapidly filling with water, yet, but for the fire, she would have settled down only to her promenade deck, and would not have gone to the bottom; that, in this condition, she could easily have been towed to a place of safety, discharged of her water, the breach in her side repaired, for a sum not exceeding $5,000, and all the rest of the damage repaired, and the boat restored to her former condition, for a sum not exceeding $10,000 in addition, including towage, but the fire burnt off her light upper works, entirely consuming a portion of them, liberated her light freight, (which was stowed under her promenade deck, on her main deck, and entirely housed in at the sides,) so that it floated off; and that thus her floating capacity was reduced to such an extent that she finally went down. This evidence, tending to prove that the steamer would have

━━━━

[2] [From 34 Conn. 561.]

floated or swum, after and notwithstanding the injury she received by the collision, had no fire intervened, was from the testimony of nautical men, who testified that they were practically acquainted with steamers of this character, and from a civil and mechanical engineer, who testified that he was well versed in his profession, and that he had made full and elaborate estimates of the materials and equipments of the boat and her cargo, upon data submitted to him by the plaintiffs, with special reference to the question, whether, or not, if simply filled with water, she would have sunk to the bottom, or only have settled to her upper or promenade deck, and still have floated or swum. The evidence tending to prove the time when the fire first broke out, the extent of the conflagration before the vessel sank, the length of time she floated after the commencement of the fire, and the other circumstances attending the fire, was mainly from eye-witnesses. There was also evidence to prove that the plaintiffs paid for raising the steamer $22,500, and that this was the precise value of the wreck, when raised. It was further in proof that it actually cost over $40,000 to raise the wreck. The plaintiffs also offered evidence to prove that, after the loss, and after the wreck was raised, and in a situation to be examined, she was examined by the defendants before they declined to pay the loss. The defendants offered no testimony on the trial, nor did they take any exceptions to the rulings of the court on the admission of evidence, except to the following question, put by the plaintiffs to the agent of the wrecking company which raised the sunken steamer: "What did the steamboat company (the plaintiffs) pay you for raising the boat?" To this question the defendants objected. The court overruled the objection, and admitted the evidence, to which ruling the defendants excepted. The plaintiffs offered evidence to prove the value of the steamer before the collision, to which the defendants objected, and the court thereupon excluded the evidence.

At the conclusion of the evidence, the defendants requested the court to charge the jury as follows: (1) The insurance effected in this case was against loss or damage by fire. The insurers took upon themselves no risk whatever, and are not liable for any loss, the efficient cause of which was a marine disaster. (2) In case of the concurrence of different perils, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominating peril, whether it is, or is not, in activity at the consummation of the disaster. (3) If, therefore, the jury shall find that the fire was simply the result of a marine disaster, and that that disaster, to wit, the collision, was the efficient predominating cause of the loss, then they are to regard the fire simply as incident to the marine disaster, and the insurers against fire alone will not be liable. (4)

If the jury could, in any event, consider the burning as a risk within the terms of the policy, they are bound to return no greater damages than the actual cash value of the steamboat at the time the fire happened; and if the jury shall find that, at the time of the breaking out of the fire, the steamer had received her death wound, and that she would inevitably have perished from the collision, no damages are to be assessed against the defendants, since the fire would add no loss to that which was already total. (5) The defendants are liable only for damages actually proved to have been caused by the burning. They are not liable for damages done to the steamer in attempts to raise her; and the burden of proof is on the plaintiffs to show, not only that they received some damage from the burning of the steamer, but also the exact amount of that damage, separate and apart from the actual damage done by the collision, and also separate and apart from the damage in various attempts to raise her. If the plaintiffs show no such distinct and definite loss, then they must fail to recover. (6) In no event can the defendants be liable for the cost of raising the vessel, and the jury are to disregard that wholly in their calculations. (7) By the terms of the policy, the defendants are not bound to pay, until proper proofs of the loss have been made out and presented. There is no evidence before the jury that any such proofs of loss have ever been presented to the company. The plaintiffs rely on a waiver by the defendants of such proofs. A waiver is an intentional abandonment of a known right. In order to find a waiver in this case, the jury must find that the defendants intentionally abandoned all their right to demand proofs of loss. In any event, the defendants would have sixty days after the waiver took effect to pay the loss; and a suit brought within the sixty days is prematurely brought, and cannot be sustained, as a waiver would confer no greater right than would arise under the required proofs. (8) The rule of damages in the case has been determined by the parties in their contract of insurance. That rule is, the cash value of the subject insured at the time the fire happened; and, the plaintiffs having failed to show what was the cash value of the steamer at such time, the verdict must be for the defendants. (9) If the jury shall find that the fire was the result of the collision, they must return a verdict for the defendants, because, in such case, the collision would be the efficient and predominating cause of loss.

THE COURT charged the jury as follows:

"The contract upon which this suit is brought is one of indemnity against loss or damage by fire, on the steamer City of Norwich, owned by the plaintiffs. This contract was in force before and at the time of the fire. The plaintiffs claim that they suffered loss by the fire to an amount exceeding the

entire insurance on their boat, and that the defendants are liable to them on their policy. The questions for the jury are, whether the plaintiffs' loss was the result of the fire, and, if so, what was the extent of that loss. Before noticing the main fact in controversy, I will dispose of two questions of law raised by the defendants, and which rest upon undisputed facts. The defendants object: (1) That proofs of loss were not furnished by the plaintiffs, in compliance with the condition to that effect in the policy. (2) That the suit was brought before any right of action had accrued under the policy, sixty days not having elapsed, after the alleged waiver of proofs. As to the first question, it is true, in fact, that no formal proofs of loss were furnished in accordance with the terms of the condition in the policy. But this point need not trouble the jury. The plaintiffs gave the defendants proper and timely notice that the loss had occurred, and the latter, after examining the wreck, and inquiring into the circumstances, and before the plaintiffs were bound to present proofs of loss, denied all liability under the policy, and refused to pay any loss resulting from the disaster, on the ground that it was a loss by a marine, and not by a fire, peril. This denial of all liability whatever by the defendants was, in judgment of law, a waiver of any further proofs of loss. The second objection, that the suit was instituted before any right of action had accrued by the terms of the policy, need not embarrass you. The defendants having denied all liability, and declined to pay, the condition fixing the time within which no suit should be brought, to wit, sixty days after proofs of loss should be furnished, was no longer binding, and the plaintiffs could bring their action at once. The main question for the jury to determine is, whether the loss sustained by the plaintiffs was the result of the fire; in other words, whether the damage they claim was the natural, necessary, and inevitable consequence of the fire. This depends upon the condition of the steamer after she was struck. A short time before the fire broke out, she came in collision with a schooner. The circumstances of the collision are not material here. According to the statement of several witnesses, she was cut through below the water line, immediately began to fill, in ten or fifteen minutes was discovered to be on fire, and, in half or three-quarters of an hour, went to the bottom, ending over as she descended, and resting on the bottom with her keel up. The question is—would she have gone to the bottom but for the fire? This is a vital question, and must be decided by the jury before the plaintiffs can recover. You will say, in view of the evidence, whether she would have gone to the bottom, or only have settled down to her promenade deck, and remained suspended in the water, but for the effect produced by the fire. If she would not have sunk, but only have settled in the water to the promenade

deck, except for the effect of the fire in reducing her floating capacity, the plaintiffs are entitled to recover, not only damage for what was actually consumed, but all the damage which inevitably resulted from the burning. The plaintiffs have offered in evidence the opinions of nautical men acquainted with steamers, and of a civil and mechanical engineer, who testified that he had made a careful computation of the floating capacity of the boat and her contents, upon data submitted to him. These witnesses give it as their opinion, that she would not have sunk below her promenade deck, had not the fire consumed a portion of her upper works. The question is one of fact for the jury. If they find, upon the evidence, that the boat would have continued to float, so that she could have been towed to a place of safety had the fire not occurred, they will find a verdict for the plaintiffs. But, as I have already intimated, if you find she would have sunk to the bottom from the effects of the collision, and without the intervention of the fire, the plaintiffs cannot recover. The remaining questions relate to the damages. You must distinguish between the damage resulting from the collision and that resulting from the fire; and, in estimating the latter, you will take the boat in the condition she was in after the collision, and before the fire had commenced its work. The plaintiffs claim, upon the evidence, that the damage done by the blow of the schooner did not exceed $5,000. To this they admit should be added a sum not exceeding $10,000 to get her into port, free her from water, and restore her to as good a condition as she was in before the injury. The calculation is based upon what they claim the evidence shows would have been the state of things had no fire occurred. These two sums, amounting to $15,000, the plaintiffs insist is the extent of the damage resulting from the marine disaster. The plaintiffs also claim that the whole damage done by the collision and fire was $84,000. Deducting the $15,000, as chargeable to the marine disaster, there remains $69,000, as directly chargeable to the fire. On the accuracy of these claims you are to decide, upon the evidence before you. If the defendants are liable at all, they are liable for one-fifteenth of the loss which the plaintiffs suffered from the fire. To repeat what I have already said: If the steamer would have sunk to the bottom had no fire broken out, the plaintiffs cannot recover. On the contrary, if she would have settled only to her promenade deck, the defendants are liable for one-fifteenth of the damage. The mode in which the damages should be estimated has occupied my attention. You will remember that the court excluded evidence of the value of the steamer before the collision took place, upon objection being made by the defendants' counsel, as her condition the moment the fire took place is the one to be considered. The plaintiffs' estimate of the damage is based

upon the cost of repairing her and restoring her to her former condition, exclusive of the amount they admit as properly chargeable to the collision. You will determine, upon the evidence, whether, in your judgment, the repairs that were put upon her enhanced her value beyond her cash value before the commencement of the fire. If they did, you will deduct from the damage you find proved a sum equal to such increase of value. If, on the other hand, you find that her restoration was only to her former condition, and did not enhance her value beyond what it was when the fire commenced its work, you will, if you find for the plaintiffs, give one-fifteenth of the cost of restoring her to the condition she was in when the fire took place.

"Where I have not charged you in conformity with the requests of the defendants, they may consider their requests denied."

Charles Chapman, James A. Hovey, and Jeremiah Halsey, for plaintiffs.

John T. Wait, Townsend Scudder, and George Pratt, for defendants.

Before NELSON, Circuit Justice, and SHIPMAN, District Judge.

SHIPMAN, District Judge. The disputed facts, in this case, lie within a very limited range, and were all distinctly submitted to the jury. The only matter now for consideration is, whether the court correctly instructed the jury on the questions of law applicable to the facts.

1. As to the waiver of proofs of loss. This point was raised on the trial, and, although not insisted on upon the argument of the motion, we will notice it here. It is conceded, that there were no formal proofs presented to the defendants, as provided for in the policy. But the written admission of the defendants, produced on the trial, conclusively proves, that the plaintiffs gave the defendants timely and proper notice that the loss had occurred, and that the latter, after examining the wreck, and inquiring into the circumstances, denied all liability under the policy, on the ground that the loss was the result of a marine, and not of a fire, peril. This was all done before the time within which the plaintiffs were, by the terms of the policy, bound to present the formal proofs, had expired. The court charged the jury, that this denial of all liability whatever, by the defendants, was, in judgment of law, a waiver of any further proofs of loss. On this point, the authorities are numerous and decisive, and fully sustain the rule laid down by the court. The denial, by the defendants, of all liability in the case, expressly conceded that there was a loss, and was a notice to the plaintiffs that they would not be bound, in any event, though formal proofs were furnished. The presentation of proofs, under such circumstances, was of no importance to either party, and the law rare-

ly, if ever, requires the observance of an idle formality, especially after the party for whose benefit the original stipulation was made, has rendered conformity thereto unnecessary, and practically superfluous. Schenck v. Mercer County Mut. Fire Ins. Co., 4 Zab. [24 N. J. Law] 447; Allegre v. Maryland Ins. Co., 6 Har. & J. 408; McMasters v. Westchester County Mut. Ins. Co., 25 Wend. 379; Francis v. Ocean Ins. Co., 6 Cow. 404; Tayloe v. Merchants' Fire Ins. Co., 9 How. [50 U. S.] 390; O'Neil v. Buffalo Fire Ins. Co., 3 Comst. [3 N. Y.] 122; Maryland Ins. Co. v. Bathurst, 5 Gill & J. 159; Graves v. Washington Marine Ins. Co., 12 Allen, 391.

2. There was no error in that part of the charge which instructed the jury that the suit was not prematurely brought. There was a provision in the policy, that the loss should be payable after sixty days from notice and the furnishing of preliminary proofs of loss to the underwriters. If the matter had gone through the formal stages provided for in the policy, and the proofs had been made, without any denial of all liability on another ground, no suit could have been sustained on the policy, until the sixty days had expired. This clause was for the protection, or convenience, of the underwriters; but, when they waived the preliminary proofs, they also waived the benefit of this stipulation, and rendered it nugatory. It would be absurd to say that they still retained the right to have sixty days within which to pay a loss which they had declared they would not pay at any time, or under any circumstances. Columbian Ins. Co. v. Catlett, 12 Wheat. [25 U. S.] 383; Allegre v. Maryland Ins. Co., 6 Har. & J. 408; Phillips v. Protection Ins. Co., 14 Mo. 220.

3. We discover no error in that part of the charge in which the court submitted to the jury the question, whether or not the proximate cause of the loss for which a recovery was sought, was to be found in the fire which followed the collision. There was little or no controversy about the facts which characterized the disaster, up to the time the fire broke out. The boat was struck on her port side, forward of her wheel house, and her hull was stove in below the water line. She immediately began to fill, and, in ten or fifteen minutes after the collision, the water rose to her furnaces, and forced the fire out upon the wood-work. It made rapid progress, and soon enveloped her in flames. She continued to float for half or three-quarters of an hour, and until a considerable portion of her upper works was consumed, when she went down, bow foremost, ending completely over, and resting on the bottom, keel up, in about twenty fathoms of water. Up to the time the fire broke out, all the damage the boat had received was the wound in her side, and the injury resulting from the water, which rushed in. And here an important question of fact arose, and that was, wheth-

er the consequences resulting from the collision alone, without the intervention of the. fire, would have gone beyond her filling, and settling in the water to her promenade deck, and there remaining suspended in the water, until she could be towed to a place of safety, her side be repaired, and the whole boat be restored to her former condition. The uncontradicted evidence was, that, had she so remained, suspended in the water, she could easily have been towed to a place of safety, her wound repaired, and every part of the boat, including her furniture, which would have been injured by the water, restored to the condition it was in before the collision, for a sum not exceeding $15,000. The actual loss proved, however, was about $84,000. On this point, there was no conflicting evidence. The difference between these sums is $69,-000, and this latter sum was claimed by the plaintiffs to be the amount of their loss naturally and necessarily resulting from the fire, and which, but for the fire, would not have happened. They offered evidence to show that, from the predominance of the floating over the sinking materials, in her structure and cargo, in connection with the fact that she was so housed in, from stem to stern, between her main and her upper or promenade deck, that her cargo would have been kept in its place, although immersed in water, her sinking was impossible, as a result of the collision merely. They also offered the testimony of eye-witnesses of the conflagration, to prove that she did actually float for half or three-quarters of an hour, and that it was not till her upper works were all on fire, and nearly consumed, by which her light freight was liberated, and enabled to float away, and her floating capacity thus greatly reduced, that she finally sank. To overcome this evidence, no proof was offered by the defendants. The court instructed the jury, that the contract upon which the plaintiffs sought to recover, was one of indemnity against loss by fire only, and that, therefore, whether her sinking was the natural and necessary result of the fire, became a vital question; and that, if the jury found this question in the negative, the plaintiffs could not recover. This instruction was more favorable to the defendants than they had a right to demand, for it was conceded, that a considerable portion of the steamer's upper works was actually consumed. The other injuries resulting after the fire broke out, for which the plaintiffs sought to recover, were occasioned by her sinking to the bottom. But, in order to simplify the question to the jury, they were instructed, that, if they found the boat would have finally sunk, had no fire broken out, their verdict must be for the defendants. They must, therefore, have found, by their verdict, that she would not have sunk, but for the fire, and, consequently, that all the damage which naturally resulted from the marine injury, was $15,000, and that all the rest was the natural and necessary result of the fire. This part of the charge may not have been couched in the formal and technical language of the text-writers on this branch of the law, but it distinctly presented the question, as to the proximate cause of the loss for which a recovery was claimed. The effect of the verdict, therefore, is to bring the case within the scope of the sound proposition (1 Phil. Ins. 5th Ed., p. 679; subsec. 1136; Id., 4th Ed. p. 692) that "in case of the concurrence of two causes of loss, one at the risk of the assured, and the other insured against, or one insured against by A, and the other by B, if the damage by the perils respectively can be discriminated, each party must bear his proportion." In the case before us this was clearly done. The loss resulting from the fire was distinctly separated, by the evidence, from any loss resulting from the collision, and the jury were instructed that the plaintiffs could recover only for such loss as naturally and necessarily resulted from the former element. There was no conflict of evidence on this point, and the jury found no damages, except such as were chargeable to fire, as the proximate cause. It is well settled, by numerous authorities, that the proximate cause of loss is to be looked to. This rule prevails in both fire and marine insurance. Jewett, J., in Gates v. Madison County Mut. Ins. Co., 1 Seld. [5 N. Y.] 469, 478, and cases there cited.

4. The rule of damages was correctly stated, under the circumstances. The rule prescribed by the policy was the cash value of the boat just before the fire. The offer was made by the plaintiffs to prove her cash value, deducting the amount she was damaged by the collision, including all necessary consequences. To this mode the defendants objected, and the only other mode was, to ascertain what it cost to repair the damages necessarily resulting from the fire. The jury were instructed that, if the cost of the repairs exceeded the fire damage, and rendered the boat more valuable, they should deduct the excess. Under the instructions, the plaintiffs could obtain no more than indemnity for the loss by fire. This they were entitled to.

5. The objection to the allowance of $22,-500 for raising the wreck is untenable. This was found to be the precise value of the wreck when recovered. It was in proof that it cost over $40,000 to raise it, but no more was allowed than the value of the same when raised. So much was saved from an otherwise total loss, and, as the defendants had the benefit of it, in the adjustment of the damages, they are chargeable with the necessary and reasonable cost of saving it. A new trial is, therefore, denied, on all the grounds.

---

NORWICH & N. Y. TRANSP. CO. (WRIGHT v.). See Cases Nos. 18,086 and 18,087.