## C. N. MOSLEY v. VERMONT MUTUAL FIRE INSURANCE COMPANY.

*Fire Insurance. Waiver. Policy construed, liberally in respect to Insured, strictly in respect to Company. Fraud.*

1.  It is well settled, that if a party insured calls upon the insurer to pay his loss, and the latter makes no specific objection to the form or sufficiency of such proofs of loss as are offered, or to the entire neglect to furnish such proofs, *in season* for the claimant to repair his error, but declines to pay the claim upon other grounds, he will be *estopped* from setting up defects in the proof of loss as a defense to the claim, being presumed to have *waived* them; *or*, the most that the insurer can claim is, that the *question of waiver* may go to the jury.

2.  Policies are construed liberally in respect to the insured, strictly in respect to the company ; thus, where the subject of insurance was *only* " goods and groceries," and there was a clause in the policy, that the keeping of gunpowder for sale or on storage " upon or in the *premises* insured," the court held that the meaning of the word, "*premises*," as used in the policy was " lands and tenements " ; that it did not include " goods and groceries " ; and, therefore, if gunpowder had been kept on " premises " not insured, it would not vitiate the policy.

3.  So, where the same policy contained this clause : " no camphene, burning fluid," &c., . . . " or any other inflammable liquid " . . " shall be kept for sale *in any building hereafter insured* in this company," and it was claimed that the plaintiff kept " gin " and " turpentine," the court held it would not take judicial notice that " gin " and " turpentine " were " inflammable liquids " ; that it was a question of fact for the jury ; and gave the same construction to the word, " *building*," as to the word, " premises " in its effect upon the policy.

4.  *Misrepresentation must be material to the risk.* If there is not a stipulation in plain and unambiguous terms in the insurance contract that any misrepresentation of fact, no matter how immaterial, shall render it void, the rule is, that it must be something *material to the risk;* thus, when the policy included clothing in a store, and the court charged that if the insured " misstated the quantity or value of any of the *kinds* of these goods,—as the number of overcoats or other articles,—either through mistake or otherwise, it would not vitiate the policy, provided he stated correctly the value of the whole, and all were insurable in the same class and at the same rates " ; *it was held*, no error.

5.  *Fraud in making proof of loss.* If the insured in good faith and as accurately and fully as he could stated his loss, a mistake in some particulars would not be fraud.

6.  *Proof in support of character.* In an action on a policy of insurance where the defendant's evidence tended to show that the plaintiff burned his own building, and that he had committed perjury in his proof of loss, evidence of the plaintiff's good character was admissible.

7.  *Interest* was properly allowed from a date nearly two months after the loss.

ASSUMPSIT upon two policies of insurance. Trial by jury, June Term, Addison County, 1881, PIERPOINT, Ch. J., presiding. Verdict for the plaintiff.

The facts are sufficiently stated in the opinion of the court.

*Wilson & Hall, John W. Stewart* and *E. J. Ormsbee,* for the defendant.

The contracts provide that *the keeping of gunpowder for sale or on storage upon or in the premises insured* without permission granted in the policies renders them void. No permission was granted or inserted in the policies.

It was conceded that he kept it in his store for sale and had sold it as he had call for it. This was in direct violation of the express terms of the contracts, and hence rendered the policies void. Flanders Ins. p. 319 ; May Ins. s. 156 ; *Campbell* v. *Charter Oak Ins. Co.,* 10 Allen, 213 ; *Faulkner* v. *Cent. Fire Ins. Co.,* 2 Bennett, 38 ; *Jennings* v. *Chenango Ins. Co.,* 2 Bennett, 437 ; *Powers* v. *N. E. Mutual Life Association,* 50 Vt. 634 ; *Boutelle* v. *Westchester Fire Ins. Co.,* 51 Vt. 4.

The court erred in the construction of this by-law, by holding that the words " *upon or in the premises insured,*" referred to the building and had no application to the stock of goods in the building. The term *premises* relates to and means the stock of goods which was the only subject of said contract. Burrills Law. Dict. ; *Hewton* v. *Ewbank,* 4 Camp. 89 ; May Ins. s. 174 ; 81 N. Y. p. 273.

Keeping gunpowder, turpentine and intoxicating liquor for sale materially enhanced the risk. These articles are not within any purpose for which plaintiff declared he used or occupied the store. *Pierce* v. *Empire Ins. Co.,* 62 Barb. 636 ; *Brink* v. *M. & M. Ins. Co.,* 49 Vt. 442.

If there was any doubt that keeping of gunpowder, turpentine and intoxicating liquor for sale with a stock of dry goods and groceries was material and increased the risk, the question should have been submitted to the jury. *Carrigan* v. *Lycoming Ins. Co.,* 53 Vt. 418 ; 20 N. H. 551 ; s. c. in 2 Bennett, 548.

As to the effect of false representations made at the time the contract was made, see May Ins. (2d Ed.) ss. 181, 184; *Carpenter* v. *American Ins. Co.*, 1 Bennett, 762; *Valton* v. *Nat. Life Ins. Co.*, 20 N. Y. 32; *Burritt* v. *Saratoga Mut.*, 5 Hill, 188; *Clark* v. *Manufacturing Ins. Co.*, 8 How. 245; 1 Phillips Ins. ss. 529, 530, 541; *Farmers' Mutual* v. *Marshall*, 29 Vt. 23; *Kimball* v. *Ætna Ins. Co.*, 9 Allen, 554; *Campbell* v. *N. E. Mut. Life Ins.*, 98 Mass. 389.

Evidence of the plaintiff's character not admissible. 1 Phil. Ev. (5th Ed.) 637; *Dillaber* v. *Ins. Co.* 69 N. Y. 256; *Wright* v. *McKee*, 37 Vt. 161; *Schmidt* v. *N. Y. Ins. Co.*, 1 Gray, 529, 535; *Goff* v. *St. John*, 16 Wend. 646; *Fowler* v. *Ætna Fire Ins. Co.*, 1 Bennett, 179.


*E. R. Hard* and *H. Ballard,* for the plaintiff.

If the company based its refusal to pay the plaintiff's loss, alone, upon his alleged " misrepresentation, fraud and false swearing " in his proofs, it was a *waiver* of compliance with any of the requirements of the by-law; or if the defendant specified certain other deficiencies in the proof, all requirements of the by-law, not so specified, were waived, and to the extent of such waiver the plaintiff was legally excused from complying with the provisions of the by-law. Wood Ins. 716, 717, 730, note; May Ins. s. 468; *Franklin Fire I. Co.* v. *Updegraff*, 43 Pa. 350; *Noyes* v. *W. County Ins. Co.*, 30 Vt. 659; *Smith* v. *Am. Ins. Co.*, 34 Wis.; *Graves* v. *Wash. M. I. Co.*, 12 Allen 391; Wood Ins. 716, 718, 719; *McMaster* v. *W. C. M. I. Co.*, 25 Wend. 379; *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 385. Forfeitures are not favored. May Ins. s. 174; Wood Ins. 177. The by-law against keeping gunpowder " upon or in the *premises*" is inapplicable to this case. May Ins. 245, 262; 4 Bennett Ins. Cas. 140; *Burrill* v. *Ch. Ins. Co.*, 1 Edm. (N. Y.) Ins. Cas. 233.; *Moore* v. *Ins. Co.*, 29 Me. 97. The by-law respecting inflammable liquids applies only to the keeping, &c., in a *building insured.* May Ins. 245, 263; *Leggett* v. *Ins. Co.*, 4 Bennett, Ins. Cas. 140. The keeping of such small quantities of gunpowder, &c., as was shown in this case would not vitiate the policy. *Carrigan* v. *Ins. Co.*, 53 Vt. 418;

Wood Ins. p. 840. It was competent for the jury to find the fact from their general knowledge that gunpowder was an article " usually kept ". *Craver* v. *Hornberg*, 26 Kans. ; 1 Gray, 592. Evidence of plaintiff's character was admissible. *State* v. *Roe*, 12 Vt. 93 ; *Sweet* v. *Sherman*, 21 Vt. 23.

The opinion of the court was delivered by

ROYCE, Ch. J. This was an action of assumpsit, declaring upon two policies of insurance issued by the defendant to the plaintiff. One of said policies is for $800, expressed to be " on dry goods and groceries in building described in Bridport "; and the other, for $1,600, " on goods in building described in Bridport." The policies have printed upon them, under the head of " extracts from the by-laws," certain conditions which are made a part of the contract of insurance, and among these " extracts " are the following :

" The keeping of gunpowder for sale or on storage, upon or in the premises insured, without a request in the application and express permission in the policy, shall render it void " ; and, " No camphene, burning fluid, spirit, gas, or any other inflammable liquid [except kerosene] shall be kept for sale in any building hereafter insured in this company, without written permission ; and in no case shall it be drawn for use by artificial light, without rendering the policy void " ; also, " All persons insured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company, and within thirty days after said loss to deliver in a particular account in detail of such loss or damage, signed with their own hands, and verified by their oath or affirmation, and also, if required, their books of account and other proper vouchers. They shall also declare on oath whether any and what other insurance has been made on the same property, and whether they were the owners of the property at the time of the loss. If there be any misrepresentation, fraud, or false swearing, the claimant shall forfeit all claim by virtue of his policy."

The main questions raised here are based upon the requests to charge. The first of these, founded on the last quoted condition in the policy, was as follows :

" I. The plaintiff cannot recover in this action ; because he has not shown compliance with the conditions of policies, and the acts of incorporation, by-laws and application, which constitute the

10

contract. First, he did not, within thirty days after his loss, declare in writing signed by him and upon his oath that he had lost any goods by fire ; second, that he was the owner or had any interest in the goods ; third, whether any and what other insurance had been made on the goods."

Without going into the refinements of counsel upon this point, we deem it sufficient to say that this requirement, being for the benefit of the company, could be waived or modified by the company ; and it is well settled, both upon principle and authority, that if a party insured calls upon the insurer to pay his loss, and the latter makes no specific objection to the form or sufficiency of such proofs of that loss as are offered, or, to the entire neglect to furnish such proofs, *in season* for the claimant to repair his error, but declines to pay the claim upon other and different grounds, specifying them, he will be estopped from thereafter setting up defects in the proof of loss as a defense to the claim being presumed to have waived them. Certainly the most that can be claimed by an insurer in such a case, is that the question may go to the jury, under proper instructions, as to whether there was in fact such a waiver. *Noyes* v. *Ins. Co.*, 30 Vt. 659 ; *Farmers, &c., Ins. Co.* v. *Meckes,* [Pa. 1881] 12 Rep. 314 ; *Palmer* v. *St. Paul, &c., Ins. Co.* [Wis. 1878,] 6 Ib. 413 ; *Goodwin* v. *Mass. &c., Ins. Co.,* 73 N. Y. 480 ; *Prentice* v. *Knickerbocker Life Ins. Co.,* 77 N. Y. 483 ; *Brink* v. *Hanover Fire Ins. Co.,* 80 N. Y. 108 ; *Ætna Ins. Co.* v. *Tyler,* 16 Wend. 385 ; *McMaster* v. *Westchester Ins. Co.,* 25 Ib. 379 ; 6 Cush. 440 ; *Kernochan* v. *Bowery Ins. Co.,* 17 N. Y. 428; *Child* v. *The Sun Mut. Ins. Co.,* 3 Sand. 42 ; *Graham* v. *Firemen's Ins. Co.,* 21 Alb. L. J. 98; *Ins. Co.* v. *Stauffer,* 9 Casey, 397; *Ins. Co.* v. *Sennett,* 41 Pa. St. 161; *Coursin* v. *Ins. Co.,* 46 Ib. 323; *Buckley* v. *Garrett,* 47 Ib. 204; *Ins. Co.* v. *Taylor,* 23 P. F. S. 343; *Ins. Co.* v. *Todd,* 2 Norris, 272 ; *Crawford, &c., Ins. Co.* v. *Cochran,* [Pa. 1879,] 7 Rep. 758 ; *Harriman* v. *Queen Ins. Co.,* 49 Wis. 71 ; *Enterprise Ins. Co.* v. *Parisot,* 35 Ohio St. 35 ; *Home Ins. Co.* v. *Baltimore Warehouse Co.,* [U. S. Sup. Ct. 1877,] 16 Am. L. Reg. N. S. 162 ; *Norwich, &c., Trans. Co.* v. *Western Mass. Ins. Co.,* 6 Blatchf. 241 ; *Bennett* v. *Maryland Fire Ins. Co.,* [U. S. Dist.

Ct. N. D. N. Y. 1878,] 17 Alb. L. J. 363, and authorities cited in these.

In the case at bar there was evidence tending to show a more or less faulty compliance with the condition relating to proofs of loss, and evidence tending to show that no objection was made by the company, at least within the thirty days after the loss, to the form or sufficiency of these proofs ; but, that the refusal of the company to pay, when brought to the knowledge of the plaintiff, was expressed to be upon other grounds. All this evidence was submitted to the jury by the·learned Chief Justice with instructions in which we find no error.; and the findings which the jury must have made, having legitimate evidence upon which to rest, and being vitiated by no error in the instructions of the court, cannot be disturbed.

The defendant's second request was that the court should charge the jury that " the plaintiff cannot recover because it appears from the evidence he furnished the defendant of his loss, and of his bills and books, that he kept on sale in said store, intoxicating liquor, turpentine, and gun-powder, which by the express terms of the contract rendered the policy void." The conditions in the policy upon which this request is founded have been quoted above. They are conditions of forfeiture, inserted for the benefit and protection of the insurer. Says COLT, J., in the recent case of *Turner* v. *Meriden Fire Ins. Co.*, U. S. C. Ct. Dist. of R. I. 22 Am. Law Reg. N. S. 275 : " We believe the general rule, that conditions in insurance policies inserted for the benefit of the company should be strictly construed against it, to be a sound one " ; and HUGHES, J., in *American Basket Co.* v. *Farmville Ins. Co.*, U. S. C. Ct. Dist. of Va. 8 Rep. 744, says, policies of insurance differ somewhat from other contracts in respect to the rules of construction to be applied to them. " They are unipartite. They are in the form of receipts from the insurers to the insured, embodying covenants to compensate for losses described. They are signed by the insurer only. In general the insured never sees the policy until after he contracts and pays his premium, and he then most frequently receives it from a distance, when it is too late for him to obtain explanations or modifications of the policy sent him. The

policy, too, is generally filled with conditions inserted by persons skilled in the learning of the insurance law, and acting in the exclusive interest of the insurance company.   Out of these circumstances the principle has grown up in the courts that these policies must be construed liberally in respect to the persons insured, and strictly with respect to the insurance company."   See also *Ins. Co.* v. *Wilkinson*, 13 Wall. 232 ; *Willis* v. *Hanover, &c., Ins. Co.*, 79 N. C.285 ; *Franklin Fire Ins. Co.* v. *Updegraff*, 43 Pa. 350, anda uthorities cited ; also there marks of POWERS, J., in *Brink* v. *Merchants, &c., Ins. Co.*, 49 Vt. 442, on page 457.   The New York Court of Appeals, in passing upon the proposition that a clause in an insurance policy providing that the policy should become void " If the property shall hereafter become incumbered in any way " without consent of the company, covered the case of an incumbrance by way of a judgment in favor of a third person, say : " To so construe it would defeat the contract of insurance in cases which could not have been contemplated.  The defendant is claiming a forfeiture.   When a clause in a contract is capable of two constructions, one of which will support and the other defeat the principal obligation, the former will be preferred.   Forfeitures are not favored ;  and the party claiming a forfeiture will not be permitted, upon equivocal or doubtful clauses or words contained in his own contract, to deprive the other party of the benefit of the right or indemnity for which he contracted."   *Baley* v. *Homestead Fire Ins. Co.*, [N. Y. 1880,] 9 Rep. 578.

The language of the first forfeiture clause in the policy in this case is, that the keeping of gunpowder  for sale or on storage " upon or in  the premises insured " shall render it void.   The subject of the  insurance is " goods "  in the one  policy ;  " dry goods and groceries," in the other.    We are not referred to, nor have we been able to find, any adjudged case, or other recognized legal authority, which gives  to the word " premises," [except as used in conveyancing  and the drafting of pleadings, &c.] any other legal definition than the  one, time honored and generally understood, of " lands and tenenemts."   Nothing is insured by the policies in this case that comes within that definition.    In order to give the clause the construction contended for by the defendant

as applicable to this case, we must· add a new meaning to the word " premises," and say that it means not only " lands and tenements," but " dry goods and groceries." We must go even further than this, and alter the very words of the contract, because the context is inconsistent with such a definition of the word " premises," the prepositions both being inappropriate. The skilled draftsman who formulated these by-laws would scarcely have prohibited the keeping of gunpowder " upon or in the dry goods and groceries insured "; and we would therefore have to say that " upon or in " is equivalent to " among " or " in the same building with," which would be directly in the teeth of the great lexicographers, who tell us that the distinctive meaning of " upon " is " not under," and of " in " " not outside of." That the taking of such liberties with the language of a contract which is plain, unambiguous and apposite, each word having a perfectly well established and understood meaning, would be allowable under any circumstances is matter of grave doubt. In the present case it would be not only giving an exceedingly liberal construction to the language of the contract, but straining that language to, if not beyond, its utmost· tension in favor of the *insurer* instead of the *insured*, which, in view of the well established rules and principles of the law, and the authorities above cited, as well as many others to the same effect, which might be referred to were cumulative authority necessary, we think would be wholly unjustifiable.

The other subdivisions of this request are founded upon the clause against " inflammable liquids " above quoted. It is claimed by the defendant that the case shows a keeping for sale by the plaintiff of certain small quantities of " turpentine " and " gin," while the plaintiff denies that this is established by the evidence. Without attempting to settle this controversy, it is sufficient to say that neither " turpentine " nor " gin " are referred to in the prohibition, unless they come within the general term, " other inflammable liquid." The burden is upon the insurer to show that they did come within this description if he would avoid liability by reason of their having been kept. We find nothing in the case to indicate that any evidence was adduced tending to show that

the turpentine and gin referred to were "inflammable liquids." The defendant strenuously contends that the jury ought not to be permitted to draw upon their own knowledge of whether gunpowder is an " article usually kept in a country store," but should find the fact only upon evidence adduced before them. If this proposition is sound, *pari ratione* there was nothing to justify the jury in finding that turpentine and gin were "inflammable liquids." Indeed it has been expressly held by the Supreme Court of Pennsylvania that the court will not take judicial notice that benzine is of like nature with camphene or spirit gas in point of inflammability or explosiveness ; but that it is a question of fact to be found by a jury " upon evidence." *Mears* v. *Humboldt Ins. Co.,* [Pa. 1879,] 21 Alb. L. J. 114. See also *Willis* v. *Hanover, &c., Ins. Co.,* 79 N. C. But by reference to the clause it will be seen that the keeping of inflammable liquids is prohibited only *in any building insured.* To construe " building " to mean " dry goods and groceries," or, add to the language of the contract so as to make it read, " in any building insured *or any building in which are goods insured,*" would certainly be no more justifiable than to take the liberties suggested with the gunpowder clause. There was no error of which the defendant can complain, therefore, in the charge of the learned judge upon these points. As is said in the case of *Mears* v. *Humboldt Ins. Co., supra,* it is to be presumed that if the company had intended these forfeiture conditions to apply to this risk, it would have so altered the language of the contract as to make them applicable, plainly and unambiguously, as could easily have been done. The plaintiff would then have had the meaning of the company plainly before him, and could have accepted or rejected the contract, understanding just what he had to expect.

The defendant's third and fourth requests were as follows :

" When the plaintiff applied to Grovenor, defendant's agent, for additional insurance, he was bound to state fairly and honestly in the application, the value of the goods he wanted insured, and to answer correctly and without misrepresentation, any inquiry of said agent, in respect to matters material to the risk ; and if the plaintiff purposely or through negligence misrepresented his stock

or its value he cannot recover. It is an implied condition of the contract of insurance, that it is free from misrepresentation or concealment, whether fraudulent or through mistake. The plaintiff cannot avoid the effect of any misrepresentation or concealment, because the agent had an opportunity to inspect the goods. If the jury find as defendant's evidence tends to show that the plaintiff represented to Grovenor, when he applied for the policy of $800, that he had purchased $1,000 of ready-made clothing, and four or five hundred dollars of dry goods, and put them in the store, and that it was untrue, the plaintiff cannot recover anything on the last policy."

The non-compliance with this request by the learned Chief Justice which is complained of as error, was, in substance, that he instructed the jury that if, when the plaintiff made application for the second policy and represented to the defendant's agent the amount and kind of goods he had on hand, upon which the additional insurance was desired, he misstated the quantity or value of any of the *kinds* of these goods—as the number of overcoats or other articles—either through mistake or otherwise, it would not vitiate the policy provided he stated correctly the value of the whole, and all were insurable in the same class and at the same rates. The charge was, in substance and effect, that the misrepresentation must be of something *material to the risk* in order to avoid the policy. It is undoubtedly competent for an insurance contract to be so drawn as that it shall become void if the applicant makes any misrepresentation of fact, no matter how immaterial, and if such is the plain language it will be enforced. *Boutelle* v. *Ins. Co.*, 51 Vt. 4. The policies in question contain no such stipulation with regard to the application itself, and certainly none with regard to oral representations which may be made to the agent at the time of making the application. In the absence of such stipulation in the policy, in plain and unambiguous terms, the rule is well settled as laid down in the charge, that such misrepresentations will not avoid the policy unless *material to the risk.* *Barteau* v. *Phœnix Ins. Co.*, [N. Y. 1876,] 3 L. & E. Rep. 303 ; *Lycoming Ins. Co.* v. *Ruben*, [Ill.] 1 Ib. 112 ; *Ryan* v. *Ins. Co.*, [Wis. 1879,] 20 Alb. L. J. 236.

With regard to the proofs of loss, the defendant requested the

court to charge that: "If the jury find that plaintiff, in making his statement of loss to the defendant, or in his preliminary proof of said loss, was guilty of any fraud or false swearing, he cannot recover"; and, "if the jury find that in making his proof of loss, (if such it is) under the provisions of the policy of October 10th, 1879, the plaintiff has been guilty of any fraud, false swearing or misrepresentation, he is not entitled to recover thereunder." The court instructed the jury, in substance, that under these requirements in the policy they must find that the plaintiff in good faith, and as accurately and fully as he could, to the best of his knowledge and belief, truly stated his loss; but, that if in such statement he might have made a *mistake* in some particulars, that would not come within the true meaning of the language of the contract. A more strict requirement than this would demand of human testimony and human accuracy more than they are capable of; and to hold that a man testifying in good faith and to the best of his knowledge and belief would be guilty of misrepresentation, fraud or false swearing, because, being human and fallible, he might be mistaken in his statement of some fact which he honestly believed to be as stated by him, would reverse the old maxim *lex non cogit ad impossibilia*, and probably render of no effect nine-tenths of the insurance policies in force throughout the country. *Hunchberger* v. *Ins. Co.*, 5 Biss. 106; *Sibley* v. *St. Paul &c., Ins. Co.*, [U. S. C. Ct. N. D. Ill. 1879,] 8 Rep. 808; *Mack* v. *Lancashire Ins. Co.*, [U. S. C. Ct. Mo. 1880,] 10 Ib. 800; *Farmers &c., Ins. Co.* v. *Meckes, supra; Dodge* v. *Ins. Co.*, [Wis. 1880,] 22 Alb. L. J. 118, and cases cited.

The requests to charge were numerous and minute; and with regard to those not covered by what has been said we deem it sufficient to say that from a careful examination of the charge we are satisfied they were complied with as far as the defendant was entitled to have them.

The defendant excepted to the admission of testimony offered by the plaintiff in support of his character for honesty, integrity and truthfulness. To determine the question of the admissibility of that evidence it is necessary to see how far the evidence which had been put in by the defendant had tended to impeach the char-

acter of the plaintiff in these particulars. That evidence tended to show not only that the plaintiff burned the building in which the insured goods were situate, but that he was guilty of perjury in making out his sworn statement of loss; and it was to meet and counteract the effect of that evidence that the evidence as to character was allowed.

The objection that was made to the testimony was " that defendant had introduced no impeaching testimony of plaintiff's character." No objection appears to have been made to the form of the questions or answers, and the court was required to rule upon the question of the admissibility of the evidence under the specific objection made. If the testimony put in by the defendant tended to impeach the character of the plaintiff for truthfulness, the evidence offered to sustain his character in that respect was admissible; that testimony, tending to show that he had sworn falsely upon a material matter then in issue and on trial, would have that tendency cannot be doubted. It was decided in *State* v. *Roe*, 12 Vt. 93, in *Paine* v. *Tilden*, 20 Vt. 554, and in *Sweet* v. *Sherman*, 21 Vt. 23, that where evidence had been introduced tending to impeach the character of a witness for truth, testimony might be introduced to sustain his general good character for truth. There was no error in admitting the evidence.

By the provisions of section seven of the act incorporating the defendant, the plaintiff would be entitled to interest on the amount of loss or damage found to have been sustained by him from the time of its happening. The defendant has no ground of complaint, therefore, of a verdict and judgment charging it with interest only from a date nearly two months subsequent to the date of the loss.

The judgment is affirmed.